Good morning. My name is Vicki Marolt Buchanan. I'm here on behalf of Michael Witkin. Mr. Witkin was assessed 30 days of good time credits. And in order for the court to assess the 30 days of good time credits, the senior hearing officer needed to find, one, that there was a violation of the rule, but more importantly, what triggered the loss of good time credits was whether there was a serious violation of the rule. In other words, was there a serious disruption of facility operations? Under Hill, there has to be some evidence of all of these factors. Could you tell me, on a procedural aspect of the case, what evidence is there that Witkin told the hearing officer what the two inmates he wanted to call would say? At the hearing itself? That's right. There is nothing in the record that says what he said at the hearing itself. They were in the library, but I don't think that there's anything actually in this. Remember, the post-hearing material includes affidavits from them that they would have said there was no disturbance. Right. But they — I don't know on what basis the hearing officer found that they were irrelevant. He didn't — there's nothing in his very limited findings, which are very — we don't have an affidavit post-hearing from Witkin that says that he told the hearing officer there were eyewitnesses. No, there's nothing other than — no, there's nothing that actually refers to what he told the hearing officer at the time of the hearing. There's a lot of affidavits from him arguing his habeas case. I'm trying to figure out just how arbitrary the hearing officer was. If — it's one thing if Witkin said, look, these are eyewitnesses, and they're going to say that there was no disturbance and I didn't raise my voice. And the hearing officer says, ah, it wouldn't matter. I don't want to waste our time. And it's a hazard to the institution to have all these people running back and forth from their cells. It's quite another if he says, I want to call two inmates. And the hearing officer has no idea why or who or what it would involve. And I don't know what it is. Based on the record, I don't know what it is either. I would assume that the hearing officer would have said, well, who are these guys? I mean, I just — I'm just assuming that. There's nothing — the record is very, very, very sparse in terms of what happened at the actual hearing. The main thing is, even before the witnesses, though, I think the focus of this has to be on whether this is a serious — there's any evidence that this is a serious offense. Even if you get past — even if we assume that there was a violation of Section 3005A, there is nothing in the record that indicates there's no evidence that this was a serious violation. There is no evidence. Well, there was — there was evidence, I thought, that — at least, that your client was standing up and shouting. And that — that may have been exactly the reason why other people were witnesses to the event and noticed that it was happening. And so I don't understand why there's no evidence that he was shouting and — Just raising his voice. Right. It didn't say shouting. He raised his voice. He admitted that he was — had raised his voice and that other people looked up from their work that they were doing in the library. But it wasn't like there was disorder. She continued to — to copy his papers that he was looking for. He went back and sat down at his seat. When Officer Tatum came into the room, she said, Mr. Witkin's going to be leaving the room right now. And that's when he said, why are you kicking me out again? And that was — at the very most, there was maybe an exchange of one minute at the very most in this entire — in this entire proceeding. There's no evidence that there was any serious disruption to the operations of the facility. None. He returned to his cell. He returned to his cell on his own. They didn't push a button. They didn't call the guards. They didn't lock it down. It was an argument. Did the librarian say that he raised his voice and was arguing with her? Yes, he did. Why isn't that enough for a prison to have a concern about a prison uprising? It's not — how does that — I'm sorry. How does that affect — seriously affect — seriously disrupt the facility? How does that seriously disrupt the facility? In college, every now and then, somebody would raise his voice and holler, food fight, and then everybody would start throwing rolls. Well, I think that if Mr. — if Mr. Why didn't his raised voice create a risk of a prison uprising? In the — in the prison library and all they did, the only evidence we have of any disturbance is that a few people raised their heads. They were reading and looked up to see the — hear raised voices. Well, it also — it also says, at least in the hearing report, that he caused a disturbance, disrupted others, and was loud and argumentative. So if he disrupted others, which was the statement made, that's a disruption of the library facility. It's some evidence. It may not — But serious, a serious disruption. There's nothing there that shows that there was any — there was any indication that anyone was going to be violent or harmed. So is that your definition? It has to be violent for it to be a serious disruption? In terms of the — in terms of the 3005, it says that it has to be — might lead to violence or to disorder. Well, disorder isn't violence. But in terms of being a serious — I don't know what — you know, a serious disruption of the facilities.  If you talk about people lifting their heads up from their law books, that's what the Gomez case was talking about. It's entirely plausible that the librarian just had it informed because he complained about her before and that she was cooking this up. The problem is two things that I see with your argument. One is there is no evidence one way or the other. And the other is that the rule doesn't say did cause serious disruption. It says might cause serious disruption. And a raised voice, it's a little hard to say why you can't fit it under that very loose rule. In terms of the serious disruption, I think it says that it did — well, the rule says — I don't have it in front of me. And 3305-2C says a serious — implies that a serious — I'm looking at 3005-A. And it says refrain from behavior which might lead to violence or disorder or otherwise endangers a facility. That's the underlying offense. In order to assess the only basis upon which the good time credits could be assessed, if there was a violation of 3005, he could be disciplined, left out of the library, he could be locked down, but to lose the good time credits, which is what triggers Hill. What triggers Hill is Section 331533, which makes it a serious offense. Not just a regular rules violation, but a serious rules violation. And that authorizes the loss of good time credits. And that particular provision, 3315-A2C, says that there was a serious disruption of the facilities. And so that is the reason why the Hill — some evidence needs to be there as to the actual disruption of the facility, not just the disruption of the room itself. I'll reserve. I'll reserve. Thank you. May I please the Court? Yanhai Harper on behalf of the appellee, Warden Eric Arnold. The district court's judgment in this case should be affirmed because the state courts reasonably applied the sum evidence test articulated in Superintendent v. Hill. Here, the state court had in its record evidence that the individual caused a disturbance in the library. Other individuals responded to that disturbance by stopping their work, and this happened in an open environment. That is sufficient evidence under Hill that — There were two inmates that weren't allowed to testify. We know from their affidavits they would have said there wasn't any disruption. They looked up, and then they got back to what they were doing. Nobody moved. Nobody even walked around the room to see what was going on, if we believe their affidavits. The important thing is they didn't testify. And the reason they didn't testify is the hearing officer wouldn't let them. Now, I was looking through his explanation to see why he didn't let them, but as far as I can tell, he doesn't say, I didn't let them testify because it would be these guys were troublemakers and bringing them to the hearing and getting them back to their cells was too risky. That would have been a good reason under the precedence, but he didn't say that. All he said was that their testimony would be irrelevant, and I don't see how he could say it would be irrelevant if there were eyewitnesses. But I also don't know if he knew there were eyewitnesses. I don't know much about what happened with the two critical eyewitnesses. So what's giving me, well, if you can give me any more than your adversary gave me, that would be helpful. Well, Your Honor, actually in this particular case there are five witnesses that are at issue. The two witnesses that Your Honor is referring to, Avila and Cooper, those inmates were excluded based on relevance, but the affidavits that you're referring do not refer to those two individuals. In essence, those affidavits refer to two separate claims that were raised by Mr. Wickett. As for Avila and Cooper, that claim was not part of the case. The affidavits were not from the two people who would have been witnesses at the hearing, but for the hearing officer not letting them? No, Your Honor. The affidavits that are in the record are for the three unidentified witnesses. Who actually testified? I'm sorry, Your Honor? Who testified? No, Your Honor. They did not testify. Those individuals were excluded because there was no information asked to them. So the hearing officer excluded their testimony. And that is what the affidavits actually refer to are those three individuals. If we go back to the record, the confusion here is that witnesses Avila and Cooper, that claim was never fairly presented to the State courts. And in not being fairly presented to the State court, there's no adequate record for this court to review. Instead, the claim that is before this court is three unidentified witnesses. I thought his petition to the California Supreme Court did present it. It said it was 14th Amendment due process hearing because the senior hearing officer intentionally denied him live witness testimony. I think that's what it said. I thought it was the opposite, that he hadn't exhausted the claim about unnamed witnesses. I may be getting it backwards, but. As to answer your question, Your Honor, yes, he says that. But as we look at Duncan v. Henry, which is very illustrative on this matter, he also needs to cite the operative facts. And the operative facts in that State supreme court decision has to do with the three identified witnesses. In that petition, he argued that these three individuals, that they were improperly excluded, that the senior hearing officer had falsified the record by saying that he had no information as to these three unidentified individuals. The claim as to Avila and Cooper was not presented to the State supreme court. So in a roundabout play, going back to the court's initial question of what was in the record regarding Avila and Cooper, what's in the record is that they were excluded because of relevance. What they may have testified to, what they could have testified to is not part of the record. And it was not before the State courts to consider in their analysis of a due process claim because it was not fairly presented to the State courts. So here, when you have a situation in which the properly presented claim is whether three unidentified witnesses were improperly excluded, the State court had enough in their record to identify that if that information wasn't before the senior hearing officer, if the affidavits in the record were postdated at the hearing, it was reasonable for the State courts to conclude that Mr. Wicken's due process rights were not violated. In this particular situation, we're looking through a lens. We're looking through the lens of Hill, which is highly deferential. We're looking at minimum due process protections that were set off in Wolf, and we're looking through that lens through AEDPA, a highly deferential standard. And in doing so, we afford double deference to the State court's decision. And here, it cannot be said that what the State courts had done was unreasonable. What is the sum evidence that there was a serious disruption? The precedents establish that taking away good time does require due process. What is the evidence that there was a serious disruption? In this particular record, the State courts had before it the fact that Mr. Wicken stood up, started arguing with the librarian. I thought he went to the librarian so the standing up wouldn't be disruptive. He went to her to ask for something, and then she said no. And then he said, are you retaliating against me because I made a complaint about you before or something like that? But it's hard to remember all these facts. Have I got it right? Well, the record establishes that Mr. Wicken was trying to get an administrative appeal copied and that the librarian told him that something was missing in it. The librarian testified in the 115 record that he started arguing with her and being disruptive. So then she had requested that an officer escort Mr. Wicken out. And at that point when the officer responded, he became angry. His voice was raised, and he was saying, why are you kicking me out of here? Come check my computer. The record evidence before the State courts showed that other inmates stopped their work to see what was happening. Counsel, would you respond to what I understood opposing counsel's argument to be that serious disruption of the facility has to mean the whole facility and can't just be a portion of it like the dining room or the library or an individual portion of the facility? I think there's two nuances to that question, Your Honor. Under State law, yes, there must be a disturbance of the institution, but that would include the law library. That is part of the institution. When we're looking at it under the umbrella of Hill, we're going to be looking to whether there's any evidence to support the decision in the record. And here there is sufficient evidence in the record. State courts, in evaluating whether the State courts unreasonably applied clearly established precedent, you look to what was before the record and the law at the time. And the law at the time is Hill and Wolfe. And in this particular case, there's no way to say that fair-minded jurists would all agree that the State courts unreasonably applied Supreme Court authority in this case. We would ask that you please affirm the district court's judgment. Now, before you step down, would you address the significance of any of Enrique Gomez, the California case? Enrique Gomez, Your Honor, is a State appellate court decision and would have no import in this Court's Federal analysis. This Court is bound to look at Supreme Court authority that was at place at the time of the decision. Enrique Gomez was an appellate court case that issued in 2016. These decisions happened in 2013, 2014. And as I've stated, they are not Supreme Court authority. If, in fact, Gomez was the State of the law when this occurred, does that affect your analysis? No, Your Honor. As to whether or not this was a serious offense under State law? No, Your Honor. It would not. Because in evaluating whether the individual violated the regulations, under State law, you would look at the factors. And here the factors are present. So it wouldn't change our analysis. Under State law, we would find that it would – I would argue that it was sufficient. But then in this context, when we're looking at it through the lens of AEDPA, we would say it cannot be unreasonably – unreasonable that the State courts affirm it. I understand that part of your argument. I guess let me put my question slightly differently. Assume hypothetically that Gomez had been decided before this incident. What impact do you think that would have on our analysis of whether some evidence was sufficient in the record to support the allegation? Even if Gomez had been in existence when the State courts had issued its decision, it would have no impact on your analysis. Because your analysis is limited to Hill and Wolfe. And here there was sufficient evidence in the record, and it was reasonable for the State courts to conclude so. It's also factually distinguishable in that a hunger strike is passive and shouting at people in the library is not. I mean, they're just factually different, regardless of the standard. Yes, Your Honor. And the facts of Gomez are even more different because there it was the refusal of nine meals. It didn't have any impact. His refusal of the nine meals had no impact on his environment or the institution. But that being said – It is more speculative. Yes, Your Honor. But Gomez would have no import to this court. It is clearly established United States Supreme Court authority. Do you mind if I ask a question? No, go ahead. As far as I can see, what the disorder that you're claiming or the disruption that you're claiming was, was that other inmates in the library who were working looked up and thereby were interrupted in their work. You have not mentioned any other disruption that either occurred or that was thought to be feared. Is that right? Yes, Your Honor. That was the disruption in the record. So all the disruption was, was interrupting other inmates in their work. The disruption was interrupting other inmates in their work and disrupting the ordinary running of the library. The library is in a situation in which these inmates are meeting deadlines. Interrupting the orderly running of the library. That's very general language. Give me more concretely what the disruption was to the running of the library. Well, in the record here, the disruption was you had the librarian feeling the need to have Mr. Wittgen escorted out because of his behavior. It's documented there in the record. What she felt. Is there testimony in the record about what she felt? There's testimony in the record which indicated that Mr. Wittgen was being argumentative and Yes, I know that. But you just said that you were relying on what she felt. And I didn't think we had any testimony about her feelings. I apologize, Your Honor. I misstate. It's not about a feeling. It's the act that I'm referring to. The act that she, the fact that she had. I'm trying to find out. There's a difference between somebody thinking their word is law and anybody who disagrees with them. It's disruptive. And somebody who is in a position of authority and when they try to exercise their rightful authority, there's resistance to the point that their authority cannot be imposed. And I'm trying to find out exactly what there is here. And I can't tell whether the librarian just had it in for the guy as he claims and didn't like somebody disagreeing with her or whether there was a real disruption. I'm not too impressed by people seeing that what's-his-name Wittgen is not happy with the librarian and looking up to see what was going on and then getting back to it. I mean, that happens all the time when you're working and somebody pokes their head into your office. Yes, but someone poking their head into your office is a significantly different situation than in a And then you get back to what you're doing. than in a prison and library setting. You're dealing with a group of individuals that order needs to be fulfilled. I agree with you completely. That's why I brought up the prison riot possibility. But there doesn't seem to be any evidence of it or even any claim that that's what the librarian or the hearing officer feared, that they thought that might occur. The facts of the record are that there was a disruption in the library. The disruption was people look up. Stopping the normal operation of the library. The librarian was there. She's there to facilitate the library. Mr. Wittgen became disruptive. She had to stop what she was doing as well and deal with the situation. There were other inmates in the library who were reacting, who actually stopped what they were doing. That is a sufficient disruption. Do you know for how long? That's not within the record, Your Honor. So, for all we know, they just looked up, ah, it's Wittgen in a library, and got back to whatever they were doing? It's not to say. The record just indicated that the individuals stopped doing their work, and it caused a disturbance. Thank you, Counsel. Thank you. Thank you. Very quickly, the chronology, as I understand it, Mr. Wittgen brought a paper to the librarian. She looked at the paper and argued with him over it. It was a paper about her. So then she copied it. He went back to it. He said, I'm not going to argue with you. He went back to his computer and did his work. She gave him the copies, and then as soon as Officer Tatum came in, nothing else was happening, and Officer Tatum came in, and she said, oh, by the way, would you take Mr. Wittgen out? You know, I'm asking that he leave. And that's when he argued with her again. I don't understand this at all. Tell me where to look in the excerpts to find that. That's all in the report. That's all in 238 through the entire report, 238 through 242. That's the entirety of the evidence. In that, Judge Kleinfeld, you talk about the witnesses. Now, I don't know, you know, it just seems it says that the witnesses, subject requested to have the following witnesses present at the disciplinary hearing. It listed Mrs. Kohler, Avia, and Cooper. Now, it would be even more arbitrary if the hearing officer didn't say, well, why are they going to be testifying to say that's irrelevant? So there's got to be some implication that he asked what they were going to be testifying to. Obviously, we don't know. And then finally, in terms of the Gomez case and the fact that it was a passive, the reason that the Gomez case came out and said that disruption has to be more than just the facility is actually disrupted, in that case, in the Gomez case, there really was a disruption because they had to change their schedules, blah, blah, blah, blah, blah, because of the hunger strike. And that's why the Gomez case came out and said, well, that's not the kind of disruption that this statute is referring to. Right. But that's also not the kind of disruption that occurred here. And I noticed that you read not from page 241, where it talks about raised voice, disturbance, disruption, loud and argumentative, which is quite different from a hunger strike. I'm sorry, I didn't. Well, it's quite different from a hunger strike, isn't it? Oh, sure. And it's an actual physical auditory disruption rather than a mere schedule change. Right. But at least in Gomez, there was a facility disruption, not just inmates looking up from their work. And there is no more evidence. Right. I don't know. I tried to search for that. I know that if it was a Federal case after the time, a Supreme Court decision after the time, then the State court would still be bound by the earlier decision. But when it's a State court interpreting its own laws that the Federal court then has to apply, I don't know if that timing makes any difference. I really searched for some rule to see if it did or didn't. I could not come up with anything. Okay. Thank you, counsel. Thank you. The case just argued will be submitted for decision. Thank you both for your arguments. And we will proceed to argument the case of Rios v. Walmart.
judges: Kleinfeld, Thomas, Graber